# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEIL WAGER, | : | CIVIL NO. 1:09-CV-1073 |
| Plaintiff, | : | (Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| YORK COUNTY DOMESTIC RELATIONS, et al., | : | |
| Defendants, | : | |

## REPORT AND RECOMMENDATION

### I. Statement of the Case

This is a civil rights action brought by Neil Wager, a man who has been the subject of longstanding child support proceedings in the York County courts spanning the past decade. In his current *pro se* complaint Wager sues a wide array of institutional and individual defendants, including: The York County Domestic Relations Office, and its staff; Pennsylvania's Department of Public Welfare: the York County Court of Common Pleas, and one of its judges, Maria Musto Cook; along with the Disciplinary Board of the Supreme Court of Pennsylvania, and a member of its staff, Patti Bednarik.

Wager's complaint is only the latest chapter in a long running saga relating to child support proceedings in York County. Indeed, as Wager himself acknowledges in his complaint this case represents the second time that Wager has sued state and

county officials in federal courts alleging that rulings in his state domestic relations proceedings reflect institutionalized discrimination based on gender. See Wager v. Rendell et al., No.1:06-CV-554 (M.D.Pa.).

Wager's 35-page *pro se* complaint levels these accusations of widespread institutionalized gender based discrimination with greater passion than clarity. Nonetheless a review of the allegations set forth in this latest federal lawsuit indicates that the events which seem to have inspired this litigation began in the summer of 2007 when Wager, who is the defendant in a nine-year old York County domestic relations case, apparently endeavored unsuccessfully to bring contempt proceedings against Melissa Miller, the plaintiff in this domestic relations matter and the mother of Wager's child. Wager's unsuccessful efforts to hold Miller in contempt form the basis for Wager's initial allegations of discrimination by: York County Domestic Relations; Andrea Marceca Strong, an attorney from that agency who appeared in court on this contempt matter; Judge Cook, who presided over this contempt proceeding; and the entire York County Court of Common Pleas. While Wager now alleges that these rulings were part of a far-reaching effort to deprive him of his constitutional rights, at the time of the rulings Wager did not appeal or challenge these state domestic relations decisions in any fashion in the state courts.

From this triggering event, the allegations in Wager's complaint expand like ripples in a pond. Thus, in his complaint Wager lodges additional accusations against Jill Conner, a York County Domestic Relations hearing officer, who presided over subsequent domestic relations proceedings in 2007 and 2008 which resulted in a modification of Wager's outstanding child support obligations. Once again, there is no indication that Wager attempted to timely appeal these state court decisions, or took any other steps in the state courts to challenge these rulings.

Instead of appealing these adverse rulings through the state courts, Wager's complaint alleges that he sought to have the Disciplinary Board of the Supreme Court of Pennsylvania sanction those legal officers involved in these proceedings by filing complaints against them. When the Disciplinary Board, acting through one of its staff attorneys, Patti Bednarik, reviewed Wager's complaints and found them to be without merit, Wager concluded that this state agency and its employees were also involved in gender-based discrimination against him, and named them as defendants in this federal lawsuit.

Wager's complaint seeks far-reaching relief from these state agencies, judicial officers, and quasi-judicial employees, including more than $5,000,000 in damages, injunctive relief, and a court order directing the defendants to provide him with an annual retirement pension of $70,000 along with full health insurance, nursing home insurance, and assisted living insurance coverage. Wager also requests declaratory

relief in the form of an order finding Pennsylvania's use of a best-interest-of-the-child standard in child support and custody matters to be unconstitutional.[1]

The various institutional and individual governmental defendants have now filed motions to dismiss Wager's complaint. These motions have been fully briefed by the parties, and are now ripe for disposition. For the reasons set forth below, and in accordance with the Court's ruling dismissing Wager's prior civil complaint, we recommend that this complaint be dismissed since: "[t]he court is bound by bedrock legal principles to grant defendants' motion to dismiss." Wager v. Rendell et al., No. 1: 06-CV-554, Slip Op. at 8 (M.D.Pa. Dec. 18, 2006).

## II. Discussion

### A. Rule 12(b)(6)– The Legal Standard.

Rule 12(b)(6) of the Federal Rules of Civil Procedure, which governs motions to dismiss like the motion lodged by the Commonwealth defendants in this case, provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently aptly noted the evolving standards governing pleading practice in federal court, stating that:

---

[1] While Wager's complaint seeks global financial relief for himself, it makes no provision for any relief for Wager's child.

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, –F.3d–, 2009 WL 2501662, at 7 (3d Cir. Aug. 18, 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983) As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.

"Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. at 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950 .

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, –F.3d–, 2009 WL 2501662, at 8 (3d Cir. Aug. 18, 2009).

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, when examining whether the complaint names proper parties to the lawsuit, and when determining whether this Court can maintain an action against state judicial employees which necessarily calls upon the federal court to call into question state court domestic relations rulings.

**B.    This Court Lacks Jurisdiction to Consider This Complaint Which Invites the Federal District Court to Review and Reject the Prior Judgments of The State Courts in Child Support Proceedings.**

At the outset, Wager's complaint fails because this court lacks subject matter jurisdiction over the issues raised by Wager, which necessarily call upon this federal court in a civil rights case to review, re-examine and reject state court rulings on child support questions, rulings which Wager never appealed through the state court system.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d. Cir 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547 (3d Cir. 2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired

its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Turner, 449 F.3d at 547.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced ." Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir. 2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g., Marran v. Marran, 376 F.3d 143 (3d. Cir. 2004); Kwasnik 228 F. App'x 238, 242 ; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir. 2006); Rose v. County of York, No. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007).

These settled principles are directly applicable here and are fatal to Wager's claims. Granting even the most liberal reading to Wager's complaint, that complaint directly invites this Court to set aside decisions rendered in state court in a

longstanding domestic relations case. Thus, Wager's complaint specifically invites us to do precisely that which we are forbidden under the Rooker-Feldman doctrine from doing: entertain a "case[] brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting [this] court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. at 284. Therefore, this Court should decline Wager's invitation and dismiss this complaint for lack of jurisdiction.

C. **Wager May Not Maintain An Action Against the Commonwealth of Pennsylvania, its Agencies or State Officials in Their Official Capacity Under 42 U.S.C. § 1983.**

In addition to this fundamental jurisdictional flaw, Wager's complaint also runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials. First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a § 1983 suit brought against an individual acting in his or her official capacity constitutes a suit

against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). This broad grant of immunity from damages claims in federal court admits of only two exceptions: First, a state can waive its immunity, see Alden v. Maine, 527 U.S. 706, 755 (1999), or, second, Congress can expressly abrogate that state immunity, provided that Congress "both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." Bd. of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001).

Wager is familiar with the protections afforded to the state by the Eleventh Amendment, since his 2006 federal civil rights lawsuit, which raised similar claims, was previously dismissed by this Court on Eleventh Amendment grounds. See Wager v. Rendell et al., No. 1:06-CV-554, Slip Op. at 8 (M.D.Pa. Dec. 18, 2006). Nonetheless, while apparently recognizing this constitutional doctrine, in an apparent effort to avoid this constitutional immunity from lawsuits conferred upon the states by the Eleventh Amendment, Wager has elected in 2009 to sue different state agencies and actors than those he unsuccessfully sued in 2006. Yet, while Wager's efforts to

evade the Eleventh Amendment display imagination, they cannot enjoy success since every agency that Wager has named in his current lawsuit has previously been found to be an arm of the state entitled to assert the protections of the Eleventh Amendment in response to federal civil rights lawsuits.

For example, it is clear beyond any dispute that the Pennsylvania Department of Public Welfare is a state agency for purposes of the Eleventh Amendment. See, Lombardo v. Pennsylvania Department of Public Welfare, 540 F.3d 190 (3d Cir. 2008) Similarly, there can be no doubt that Pennsylvania's court of common pleas are institutions of state government which are cloaked with immunity under the Eleventh Amendment to the United States Constitution. See, e.g., Benn v. First Judicial District of Pennsylvania, 426 F.3d 233 (3d Cir. 2005); Greer v. Court of Common Pleas of York County, No. 07-1051, 2007 WL 1853766 (M.D. Pa. June 26,)(Conner, J.) aff'd., 259 F.App'x. 437 (3d Cir. 2007).

The constitutional protections afforded to the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's unitary court system. These court agencies, which also enjoy immunity from lawsuit under the Eleventh Amendment, include the Disciplinary Board of the Supreme Court of Pennsylvania, see, e.g., Democracy Rising Pa. v. Celluci, 603 F.Supp.2d 780 (M.D. Pa. 2009)(Conner, J.); Lucas v. Disciplinary Board,

320 F.Supp.2d 291 (M.D. Pa. 2004)(Jones, J.), aff'd., 128 F.App'x 235 (3d Cir. 2005), as well as the various county common pleas court domestic relations agencies which are defined by statute as arms of the state courts, and institutions of state government. See, e.g., Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009);Van Tassel v. Lawrence County Domestics Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). Absent an express waiver of the immunity established by the Eleventh Amendment, all of these agencies, and their employees who are sued in their official capacities, are absolutely immune from lawsuits in federal court.

In this case, with respect to Wager's claims, it is apparent that Congress has not expressly abrogated the constitutional immunity of any of these state agencies and officials with respect to federal lawsuits, and the Commonwealth clearly has not waived this immunity. Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa.C.S.A. §8521(b). While Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, see 42 Pa.C.S.A. §8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to

waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa.C.S.A. §8521(b).

Moreover as a matter of statutory interpretation, Wager cannot rely upon § 1983 to bring a damages action against these state agencies or state officials in their official capacity since it is well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989). Therefore both as a matter of statutory interpretation, and by virtue of the immunity conferred upon the states by the Eleventh Amendment, Wager is forbidden from maintaining this action against the state agencies named in his complaint and the state officials he has identified in his complaint, to the extent that those officials are sued in their official capacity under § 1983. See, e.g., Quern v. Jordan, 440 U.S. 332, 342 (1979); Edelman v. Jordan, 415 U.S. 651, 663 (1974); Benn v. First Judicial District of Pennsylvania, 426 F.3d 233 (3d Cir. 2005); Greer v. Court of Common Pleas of York County, No. 07-1051, 2007 WL 1853766 (M.D. Pa. June 26,)(Conner, J.) aff'd., 259 F.App'x 437 (3d Cir. 2007).

### D. The Judicial Employees and Officials Named By Wager in His Lawsuit Are Also Entitled to Immunity from Lawsuit.

Finally, to the extent that Wager seeks in his complaint to hold a state judge, and state judicial agency employees like a Domestics Relations hearing officer, Domestic relations agency counsel, or Disciplinary Board counsel personally liable for damages, it is well-settled that these officials are also individually cloaked with immunity from liability. The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d. Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.

The scope of these protections extend beyond judges and prosecutors to those who take discretionary actions at the direction of the courts. As this court has observed:

> Quasi-judicial officers, who act in accordance with their duties or at the direction of a judicial officer, also are immune from suit. *See Gallas,* 211 F.3d at 772-73 (court administrator entitled to immunity for release of

information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969) (holding that prothonotary, acting under court direction, was immune from suit). The doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir.1992). See also Johnson v. Kegans, 870 F.2d 992, 995 (5th Cir.1989) ("Prosecutors and other necessary participants in the judicial process enjoy quasi-judicial immunity as well.").Quasi-judicial absolute immunity is available to those individuals, such as Defendants Kline and Brewer, who perform functions closely associated with the judicial process. Marcedes v. Barrett, 453 F.2d 391 (3d Cir.1971) (holding that quasi-judicial immunity applied to clerk of courts, an administrative assistant to the president judge and a court reporter); Henig v. Odorioso, 385 F.2d 491, 494 (3d Cir.1967) (holding that judiciary employees executing judicial orders are immune from suit); Davis v. Philadelphia County, 195 F.Supp.2d 686 (E.D.Pa.2002) (holding that quasi-judicial immunity applies to court staff, such as clerks of judicial records and court reporters).

Stout v. Naus, 09-390, 2009 WL 1794989, at 3 (M.D. Pa. 2009)(McClure, J.).

These longstanding common law immunities for judicial, quasi-judicial, and prosecutorial officials directly apply here and would also prevent Wager from maintaining this civil action for damages against the individual defendants he has named in his complaint. For example, a judge, like Judge Cook, who presides over domestic relations cases in entitled to judicial immunity for her actions. Kwasnik v. Leblon, 228 F.App'x 238, 243 (3d Cir. 2007). As the Third Circuit explained when it

rejected a similar effort to impose personal civil rights liability on a judge in a domestic relations case, this immunity is both broad and absolute:

> A judicial officer in the performance of his or her duties has absolute immunity from suit. Mireles v. Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citation omitted).

Kwasnik, 228 F.App'x at 243.

Similarly, disciplinary board officials and counsel are also entitled to avail themselves of this immunity from lawsuit by those who are disappointed by the way in which the disciplinary board performs its important adjudicative functions. See, e.g., Kwasnik v. Leblon, 228 F.App'x 238 (3d Cir. 2007); Frankel v. Disciplinary Board, No. 05-1450, 2005 WL 2994345 (E.D. Pa. 2005); Thompson v. Kramer, No. 93-2290, 1994 WL 725953 (E.D. Pa. 1994); Haagensen v. Supreme Court, No. 08-1560, 2009 WL 532541 (W.D. Pa. 2009). Therefore, these immunities prevent Wager may from maintaining this action against Disciplinary Counsel Bednarik. See Frankel v. Disciplinary Board, No. 05-1450, 2005 WL 2994345 (E.D. Pa. 2005).

The scope of this immunity further embraces court personnel like Domestic Relations staff attorneys and hearing officers, who perform discretionary, and

adjudicative, functions under the guidance and direction of the courts. Indeed, courts have specifically held that Domestics Relations agency staff are entitled to assert this immunity in civil rights actions. For example, in <u>Slawek v. White</u>, No. 91-1164, 1992 WL 68247, at 3 (E.D. Pa. 1992), the court conferred this immunity on domestic relations personnel, noting that such immunity was consistent with caselaw and stating:

> In <u>Hamill v. Wright</u>, 870 F.2d 1032, 1037 (5th Cir.1989), a director of the domestic relations office was declared to be "entitled to full prosecutorial immunity from damages because his decision to bring contempt proceedings and his participation in those proceedings was pursuant to his quasi-judicial duties." (citing <u>Imbler v. Pachtman</u>, 424 U.S. 409, 96 S.Ct. 984 (1976)). Here, these Domestic Relations officials' conduct, under the facts relied upon by the Plaintiff, in continuing to prosecute the paternity claim was pursuant to Pennsylvania law and Judge Salas' directives, and as such are entitled to immunity.

<u>Slawek</u>, 1992 WL 68247, at 4. <u>See, e.g.</u>, <u>Buchanan v. Gay</u>, 491 F. Supp.2d 483 (D. Del. 2007); <u>White v. Green</u>, No. 09-1219, 2009 WL 2412490, (E.D. Pa. 2009); <u>Johnson v. Lancaster County Children and Youth</u>, No. 92-7135, 1993 WL 245280 (E.D. Pa. 1993).

Thus, entirely aside from the jurisdictional flaws in this case, and the constitutional immunity conferred upon the state by the Eleventh Amendment, this action fails against the individual defendants because those defendants are uniformly

entitled to immunity from personal liability for their official actions in our judicial system.

**III     Recommendation**

In December 2006, this Court rejected Wager's first effort to use federal civil rights statutes to challenge the conduct of state domestic relations proceedings in York County, holding that: "The court is bound by bedrock legal principles to grant defendants' motions to dismiss." Wager v. Rendell et al., 1: 06-CV-554, Slip Op. at 8 (M.D.Pa. Dec. 18, 2006). Three years later those bedrock principles remain the same and compel the same result for this plaintiff.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** as follows: The defendants' motions to dismiss (Docs. 12, 14 and 23) should be **GRANTED** and this case should be **DISMISSED** in its entirety. The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all

parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 7th day of October 2009.

       *S/Martin C. Carlson*
       **United States Magistrate Judge**